UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

BRAD COHEN, an individual,
SETH COHEN, an individual, and
CCS MUSIC GROUP, LLC,
a Florida limited liability company,                    CASE NO.: _____

       Plaintiffs,

v.

SCOTT STORCH, an individual, and
FLORENCE MIRSKY, an individual,

       Defendants.
_____/

## COMPLAINT

Plaintiffs, BRAD COHEN ("B. COHEN"), SETH COHEN (S. COHEN) and CCS MUSIC GROUP, LLC ("CCS"), by and through undersigned counsel, hereby sue Defendants, SCOTT STORCH ("STORCH") and FLORENCE MIRSKY ("MIRSKY"), and, in support thereof, state as follows:

### NATURE OF ACTION, JURSIDCTION, AND VENUE

1.    This is a civil action alleging Breach of Contract, Breach of Fiduciary Duty, Fraud in the Inducement, Unjust Enrichment, Conversion and Tortious Interference.

2.    Plaintiffs seek monetary damages as well as injunctive relief and declaratory judgments from the Court.

3.      Additionally, Plaintiffs reserve the right to amend this Complaint to add a count of Civil Theft under F.S. § 772.11 as well as expand claims for purposes of punitive damages in the future.

4.      Furthermore, this action is proper as a derivative action under Chapter 605 of the Florida Revised Limited Liability Company Act. Article III, Section 1 of the November 2015 Operating Agreement (defined, *infra*) provides additional justification that this serves as a proper derivative action, since S. COHEN, B. COHEN and STORCH agreed that, "Notwithstanding the foregoing or anything to the contrary contained herein, the Members understand and agree that Manager Member Brad Cohen and Manager Member Seth Cohen shall wholly exercise and maintain control of all management and major decisions pertaining to the LLC's operations for the life of the LLC, unless otherwise determined in writing by a unanimous vote of the Members." This action serves as a management and/or major decision pertaining to CCS.

5.      It is due to the questions presented as part of the request for a declaratory judgment that the United States District Court for the Southern District of Florida, Fort Lauderdale division has jurisdiction over this matter. Specifically, Defendant STORCH has sent a cease-and-desist letter to Plaintiffs, claiming that agreements entered into between the parties violate the wiring requirement of the Copyright Act (specifically 17 U.S.C. § 204) and demands that Plaintiffs immediately cease and desist further exploitation, use, distribution or dissemination of STORCH's copyrights. The district courts have original jurisdiction, under 28 U.S.C. § 1338, of any civil action relating to copyrights. STORCH threatens CCS that further exploitation, use, distribution of STORCH's copyrights will be deemed intentional acts of copyright infringement, punishable under 17 U.S.C. § 204 and violations of the Lanham Act. Under 28 U.S.C. § 2201. There is subject matter jurisdiction based on Plaintiffs seeking a

declaration of the parties' rights. STORCH's coercive action, concerning threats made under the Copyright Act and Lanham Act, would itself be within federal jurisdiction; thus, Plaintiffs' declaratory judgment count, requires the district court to oversee this matter.

6.     Defendants are subjected to the courts of Florida under F.S. § 48.193. At a minimum, STORCH submitted himself to the jurisdiction of the courts of Florida by (a) engaging in and carrying on a business, CCS, in this state; (b) causing injury to S. COHEN and B. COHEN within the State of Florida based on the causes of action described herein, while engaged in service activities within Florida; and (c) breaching a contract – the Operating Agreement of CCS Music Group, LLC (attached hereto as **Exhibit "A"** and referenced herein as the "November 2015 Operating Agreement") – the State of Florida by failing to perform acts required by the contract. At a minimum, MIRSKY submitted herself to the jurisdiction of the court of Florida by committing a tortious act – tortious interference with contract – within the State of Florida, through her tortious interference of the valid November 2015 Operating Agreement by and between S. COHEN, B. COHEN and STORCH.

7.     STORCH is additionally subjected to the courts of Florida, under F.S. § 685.102, based on Article XVI, Section 2 of the November 2015 Operating Agreement, which states, "To the extent permitted by law, this Agreement shall be construed in accordance with and governed by the laws of the State of Florida."

8.     Venue in Broward County, Florida is proper under 28 U.S.C. § 1391, since Broward County, Florida is where the causes of action accrued, including but not limited to the breach of the November 2015 Operating Agreement by STORCH and the tortious interference with contract committed by MIRSKY. The registered office of CCS is 1002 E. Newport Center Drive, #200, Deerfield Beach, FL 33442, which is in Broward County, Florida. Furthermore,

STORCH voluntarily consented to his address being listed as the office of CCS in the filing of documents with the Florida Department of State Division of Corporations.

9.      Additionally, venue in Broward County, Florida is proper under F.S. § 817.031, since Plaintiffs include a count for Fraud in the Inducement arising out of the written statements made as part of the November 2015 Operating Agreement, which were written in Deerfield Beach, Florida, within the boundaries of Broward County, Florida.

## PARTIES

10.      Plaintiff, S. COHEN is an individual who is a Member of CCS and owns a 33.33% interest in the LLC.

11.      Plaintiff, B. COHEN is an individual who is a Member of CCS and owns a 33.33% interest in the LLC.

12.      Plaintiff, CCS is a Florida limited liability company with a principal address located at 1002 E. Newport Center Dr., #200, Deerfield Beach, FL 33442. CCS is divided into 33.33% interests among members S. COHEN, B. COHEN and STORCH. S. COHEN is the registered agent of CCS. The registered office is the same as CCS' principal address.

13.      Defendant, STORCH is an individual who resides at 10420 Majestic Ct., Parkland, Florida 33076 under a Residential Lease for Single Family Home or Duplex, where he is listed as a co-tenant with B. COHEN, which is executed and initialed by STORCH. STORCH is listed as a member or officer/director of many Florida limited liability companies and for-profit corporations, including but not limited to Kush Studios, LLC, 954 Sound Inc., Storchavelli Inc. and Storch Maloof Company of Music, LLC.

14.     Defendant, MIRSKY is, upon information and belief, a resident of Los Angeles County, California and is the owner/agent for service of process for California for-profit corporation Sunset Plaza Florist, Inc., 8649 Sunset Blvd., West Hollywood, California 90069.

## BACKGROUND ON SCOTT STORCH

15.     In June 2015, STORCH filed for bankruptcy. In close proximity to that event, S. COHEN and B. COHEN decided that they were willing to assist STORCH reestablish himself in the music business by way of creating a new company that would have control of all intellectual property created and owned by STORCH, in exchange for consideration, and that company would be able to exploit the intellectual property for monetary gain.

16.     STORCH was a king of the music industry a decade prior to filing for bankruptcy in June 2015. He became the go-to producer for some of the biggest stars in music, including Dr. Dre, Lil Wayne, 50 Cent, Beyoncé, T.I., Chris Brown, Christina Aguilera and Jay Z.

17.     In 2005, STORCH was named Songwriter of the Year at the 22nd Annual ASCAP Pop Music Awards, receiving the honor for his contributions on five award-winning songs.[1]

18.     In 2006, STORCH was earning six-figure sums in exchange for producing beats, which took him roughly fifteen minutes to craft . . . he became a millionaire by the age of twenty-six years old and was asked to co-write Justin Timberlake's highly successful "Cry Me a River."[2]

19.     It was STORCH's undeniable musical talent that attracted S. COHEN and B. COHEN into establishing a business relationship with STORCH, despite the troubles that

---

[1] *See* "Scott Storch Named Songwriter of the Year at 22nd Annual ASCAP Pop Music Awards," ASCAP.com, May 16, 2005, available at http://www.ascap.com/Press/2005/popawards_051605.aspx.
[2] *See* Gus Garcia-Roberts, "Scott Storch Raked In Hip-Hop Millions and then Snorted His Way to Run," Miami New Times, Apr. 22, 2010, available at http://www.miaminewtimes.com/music/scott-storch-raked-in-hip-hop-millions-and-then-snorted-his-way-to-ruin-6379174.

STORCH found himself in between his rise to stardom and the filing for bankruptcy in June 2015.

20.     In 2006, around the same time that STORCH was busy producing hit records, STORCH became addicted to cocaine.[3] He abused the drug for three years and lost $30 million in the process.[4] STORCH was additionally arrested for grand theft auto and had fallen behind in child-support payments as well as his property taxes.[5] STORCH's prior drug use concerned S. COHEN and B. COHEN.

21.     In 2009, STORCH filed for bankruptcy for the first time and checked into rehab in an effort to kick his drug addiction.[6]

22.     In 2012, STORCH was arrested for possession of cocaine.[7]

23.     In June 2015, STORCH filed for bankruptcy in Miami-Dade County, Florida, listing assets of $3,600 and a debt of roughly $4.4 million.[8] B. COHEN and S. COHEN assisted STORCH with finding a bankruptcy attorney to handle STORCH's overwhelming debt issues.

### B. COHEN'S AND S. COHEN'S BUSINESS WITH STORCH

24.     In 2009, STORCH told *DETAILS*, "I've got to prove myself to the people that write checks . . . People will see that everything is intact."[9]

25.     B. COHEN and S. COHEN were aware of STORCH's troubled past as well as his June 2015 bankruptcy filing when they agreed to enter into business with STORCH. They were

---

[3] *See* Shaheem Reid, "Scott Storch Recovering From Cocaine Addiction, $30 Million Loss," MTV News, Apr. 24, 2009, available at http://www.mtv.com/news/1609984/scott-storch-recovering-from-cocaine-addiction-30-million-loss/.
[4] *Id.*
[5] *Id.*
[6] *See* Cavan Sieczkowski, "Scott Storch Files For Bankruptcy After $70 Million Fortune Dwindles To $100 In Cash," The Huffington Post, June 25, 2015, available at http://www.huffingtonpost.com/2015/06/25/scott-storch-bankruptcy_n_7661638.html.
[7] *See* Andrew Nodell, "Scott Storch blew $70M on cars and cocaine," June 25, 2015, available at http://pagesix.com/2015/06/25/scott-storch-blew-70m-on-cars-and-cocaine/.
[8] *Id.*
[9] *See* Matt Hendrickson, "Scott Storch," DETAILS, 2009, available at http://www.details.com/story/hip-hop-producer-scott-storch-and-his-battle-with-cocaine?currentPage=1.

led to believe, by STORCH, that the music producer was once again ready to prove himself as a worthy record producer and use his deep connections in the music industry to make money for the three of them, through CCS' exploitation of intellectual property that STORCH was voluntarily handing over to the company.

26.     On or about June 16, 2015, STORCH, B. COHEN and S. COHEN entered into a Limited Liability Company Agreement of CCS, which was fully executed by all three individuals, with exhibits attached thereto that acknowledged the initial capital contributions to CCS made by S. COHEN and B. COHEN were $750,000.00 and which included a waiver that STORCH signed, acknowledging and understanding that STORCH had the right to have counsel review the attached Performance Agreement; STORCH elected to execute the Agreement without such review by counsel.

27.     On or about June 27, 2015, STORCH, B. COHEN and S. COHEN voluntarily entered into an Amendment to the Limited Liability Company Agreement of CCS, which acknowledged that additional capital contributions in the amount of $350,000.00 had been made to CCS by B. COHEN and S. COHEN.

28.     On or about November 26, 2015, STORCH and B. COHEN's wife were in a recording studio, without B. COHEN or S. COHEN in attendance, when STORCH executed a new Operating Agreement of CCS – the November 2015 Operating Agreement – a valid, binding document that has been signed by STORCH, B. COHEN and S. COHEN.

29.     STORCH acknowledged that valuable consideration was received as part of the signing of the November 2015 Operating Agreement.[10]

---

[10] *See* Ex. "A", Article VI, Section 1 ("The Members understand, acknowledge and agree that Member Scott Storch represents, warrants and agrees, and hereby licenses, transfers and assigns to the LLC, for valuable consideration, the sufficiency and receipt of which is hereby acknowledge by the Members . . .") (emphasis added).

30.     **B. COHEN and S. COHEN provided in excess of $1,000,000 of capital to CCS in an effort to help fund STORCH's comeback in the music industry**, agreed to pay STORCH's expenses, paid STORCH a weekly salary, provided STORCH with a Rolls-Royce Ghost and rented a house in Parkland, Florida for STORCH to enjoy.

31.     Yet, STORCH decided to breach the November 2015 Operating Agreement, convert property from CCS, breach his fiduciary duty to the company and hire a law firm to send B. COHEN, S. COHEN and CCS a demand letter that makes it seem like STORCH is back to his old ways and is not someone to trust with any monies.

32.     In fact, B. COHEN and S. COHEN had an agreement with STORCH that B. COHEN and S. COHEN would take the Rolls-Royce Ghost away from STORCH if he failed a drug test or it was otherwise discovered by B. COHEN and/or S. COHEN that STORCH was using drugs. In mid-December 2015, B. COHEN and S. COHEN discovered that STORCH was again using drugs and demanded return of the vehicle. The vehicle is in S. COHEN's name and S. COHEN did not want it to become an insurance liability. Upon information and belief, the demand that STORCH return the vehicle partially led to B. COHEN and S. COHEN falling out of grace with STORCH.

## STORCH'S FAILURE TO PROVIDE PRODUCTION SERVICES ON A FIRST PRIORITY, EXCLUSIVE BASIS

33.     Article V of the November 2015 Operating Agreement states, "Member Scott Storch represents, warrants and agrees to provide professional music production and music composition services (the "Production Services") to the LLC for the life of the LLC on a first priority, exclusive basis, and such Production Services may further be defined by an employment agreement and/or independent contract agreement executed by and between Member Scott Storch and the LLC."

34.     On December 21, 2015, STORCH, through a letter delivered by his legal counsel Mr. Richard Wolfe, Esq. of Wolfe Law Miami, P.A. to B. COHEN and S. COHEN, individually and on behalf of CCS (attached hereto as **Exhibit "B"** and referred to as the "Wolfe Letter"), stated that "Mr. Storch hereby demands that you and CCS cease and desist any further exploitation, use, distribution or dissemination of any of Mr. Storch's copyrights or his name, image or likeness." The Wolfe Letter further demanded that B. COHEN, S. COHEN and CCS cease any and all communications with STORCH, effectively rendering Article V useless, and creating an explicit, material breach by STORCH of the November 2015 Operating Agreement.

35.     On or about December 12, 2015, STORCH told B. COHEN and S. COHEN that STORCH can no longer work with them and CCS, and that STORCH would be working with Defendant MIRSKY to provide Production Services thereafter.

36.     STORCH has begun to conduct business with Defendant MIRSKY, in violation of Article V of the November 2015 Operating Agreement by, *inter alia*, providing Production Services to MIRSKY, which means that STORCH has not been providing same to CCS on a first priority, exclusive basis.

37.     Additionally, STORCH has materially breached Article VIII, Section 2 of the November 2015 Operating Agreement, which reads, "Member Scott Storch represents, warrants and agrees to participate in the LLC and to perform the Production Services contemplated herein on a first priority, exclusive basis to the LLC, and such performance shall be subject to the provisions contained in Article V above."

### STORCH'S INTERFERENCE WITH PROPERLY TRANSFERED IP RIGHTS

38.     Article V of the November 2015 Operating Agreement states, "Any IP Rights (as hereinafter defined) created, utilized or employed by Member Scott Storch and/or the LLC prior

to the date of Member Scott Storch's forfeiture, will remain property of the LLC and at no time may such IP Rights be contested by Member Scott Storch."

39.     From a business standpoint, the only reason that B. COHEN and S. COHEN would contribute the significant amount of capital contributions to CCS was to exploit something that CCS had to offer. Specifically, the offering that CCS was entitled exploit, which could "at no time . . .  be contested by Member Scott Storch," were the IP Rights created, utilized and/or employed by STORCH that he voluntarily licensed, transferred and assigned to CCS.

40.     Article VI, Section 1 of the November 2015 Operating Agreement says, "Member Scott Storch represents, warrants and agrees, and hereby licenses, transfers and assigns to the LLC, for valuable consideration, the sufficiency and receipt of which is hereby acknowledged by the Members, the right to utilize Member Scott Storch's name, image, likeness, trademarks, servicemarks, music publishing rights, and any other intellectual property interest related to him ("IP Rights"), without limitation.  Such assignment shall be valid for the life of the LLC and throughout the Universe, and Member Scott Storch represents, warrants and agrees to execute any and all documents deemed reasonable and necessary to evidence such grant of rights to the LLC."

41.     Article V and Article VI, Section 1 of the November 2015 Operating Agreement make it clear that STORCH acknowledged consideration in exchange for the license, transfer and assignment of IP Rights and that such rights were, in fact, licensed, transferred and assigned.

42.     On or before December 21, 2015, STORCH breached the provisions of Article V and Article VI, Section 1 of the November 2015 Operating Agreement.

43.     Through the Wolfe Letter, STORCH, disavowed, voided, terminated and renounced "any transfer of any copyrights or rights in favor of CCS and any prospective to CCS under same," which constituted a material breach of the November 2015 Operating Agreement.

44.     On or before December 21, 2015, STORCH also demanded that B. COHEN, S. COHEN and CCS "cease and desist any further exploitation, use, distribution or dissemination of any of Mr. Storch's copyrights of his name, image or likeness," despite the fact that the November 2015 Operating Agreement was entered into and the significant capital contributions were provided by B. COHEN and S. COHEN in exchange for STORCH's promise to license, transfer and assign same.

**MIRSKY INTERFERES WITH STORCH'S COMMITMENT TO CCS**

45.     On November 26, 2015, the date that STORCH executed the November 2015 Operating Agreement, STORCH informed Defendant, MIRSKY that he was executing same.

46.     On or around the time that STORCH executed the November 2015 Operating Agreement, STORCH was verbally arguing with MIRSKY as a result of MIRSKY strongly advising STORCH not to sign the November 2015 Operating Agreement.

47.     MIRSKY knew of the existence of the November 2015 Operating Agreement from the day that the November 2015 Operating Agreement was fully executed, valid and binding among B. COHEN, S. COHEN and STORCH.

48.     MIRSKY engaged in a plan to pry STORCH away from CCS as soon as the November 2015 Operating Agreement was signed by the parties thereto.

49.     Since November 26, 2015, MIRSKY (a) advised STORCH to back out of his contractual arrangement with B. COHEN, S. COHEN and CCS; (b) paid for STORCH to travel to Los Angeles County, California; (c) set up meetings between STORCH and many potential

clients that CCS had been in business talks with; and (d) caused STORCH to inform B. COHEN, S. COHEN and CCS that STORCH was not willing to comply with the November 2015 Operating Agreement, and was instead going to work with MIRSKY with regard to the Production Services.

50.     MIRSKY intentionally acted to disrupt the contractual relationship between B. COHEN, S. COHEN, CCS and STORCH, had no legal justification to interfere and caused extreme damage to the Plaintiffs as a result of her actions.

51.     Despite Plaintiffs' attempts to work hand-in-hand with STORCH to the benefit of all parties, STORCH has instead decided to engage MIRSKY, after MIRSKY's initial attempt to prod STORCH away from B. COHEN, S. COHEN and CCS, to the detriment of Plaintiffs, and in direct contravention of STORCH's contractual obligations.

### ADDITIONAL CLAIMS BASED ON STORCH'S WRONGFUL ACTS

52.     STORCH's actions are a direct breach of his fiduciary duties to CCS as a Member of same.

53.     In fact, Article VIII, Section 1 of the November 2015 Operating Agreement makes it clear that, "The Members and Officers shall perform their duties in good faith, in a manner they reasonably believe to be in the best interests of the LLC and with such care as an ordinary prudent person in a like position would use under similar circumstances."

54.     STORCH has not acted in the best interests of CCS, using the company as well as B. COHEN and S. COHEN as a piggybank and making promises that STORCH failed to keep and never intended to perform.

55.     STORCH has not used such care as an ordinary prudent person in a like position would use under similar circumstances, which would be no less than having some concern for the longevity and benefit of the company.

56.     As a direct and proximate result of STORCH's inexplicable acts complained of herein, Plaintiffs have suffered severe and irreparable harm, and have been forced to retain the undersigned law firm in order to assert and defend their rights.

57.     Of note, STORCH agreed that B. COHEN and S. COHEN would be irreparably damaged if any provisions of the November 2015 Operating Agreement are not performed in accordance with their specific terms "and that monetary damages would not provide an adequate remedy in such an event. Accordingly, it is agreed that, in addition to any other remedy to which the non-breaching Members may be entitled, at law or in equity, the non-breaching Members shall be entitled to injunctive relief to prevent breaches of this Agreement and, specifically, to enforce the terms and provisions of this Agreement in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof." *See* **Exhibit "A", Article XVI, Section 5.**

58.     Based on STORCH's (a) history of drug use, including evidence of recent abuse; (b) prior squandering of monies received from providing services in the music industry; (c) overt affiliation with MIRSKY that has a real threat of diverting monies actually owed to CCS; and (d) sincere concern that CCS will otherwise not be able to collect monies to repay the significant contributions provided by B. COHEN and S. COHEN, an injunction and additional remedies in equity are necessary under the circumstances.

## COUNT I – BREACH OF CONTRACT AGAINST STORCH

59.     Plaintiffs hereby re-allege the allegations contained in paragraphs 1-58 as if fully set forth herein and state as follows:

60.     This is a count for Breach of Contract against STORCH.

61.     On or around November 26, 2015, B. COHEN, S. COHEN and STORCH entered into the November 2015 Operating Agreement.

62.     Pursuant to the terms of the November 2015 Operating Agreement, STORCH represented, warranted and agreed to provide "Production Services" for CCS, defined in Article V of the November 2015 Operating Agreement as "professional music production and music composition services," to CCS, for the life of CCS, on a first priority, exclusive basis.

63.     Furthermore, STORCH represented, warranted and agreed to license, transfer and assign to CCS the right to utilize STORCH's name, image, likeness, trademarks, servicemarks, music publishing rights and any other intellectual property interest related to STORCH, without limitation, and the assignment was to be valid for the life of CCS and throughout the universe.

64.     CCS remains an active limited liability company in the State of Florida.

65.     However, through the Wolfe Letter, STORCH's separate statements to B. COHEN and S. COHEN confirming an intention to completely separate himself from CCS and have no further obligations toward CCS, STORCH's renouncement of any transfer of copyrights or rights in favor of CCS, and STORCH's business relationship with MIRSKY, STORCH acted and continues to act in direct and material contravention of the stated terms of the November 2015 Operating Agreement.

**WHEREFORE**, as a direct and proximate result of STORCH's actions stated herein, Plaintiffs request that this Honorable Court render judgment in excess of $1,000,000, plus interests and costs, and such further relief as the Court may consider just.

<u>**COUNT II – BREACH OF FIDUCIARY DUTY AGAINST STORCH**</u>

66.    Plaintiffs hereby re-allege the allegations contained in paragraphs 1-58 as if fully set forth herein and state as follows:

67.    This is a count for Breach of Fiduciary Duty against STORCH.

68.    STORCH is listed as a Member of CCS, a manager-managed limited liability company duly organized in the state of Florida.

69.    As a Manager Member of CCS (per Article III, Section 1 of the November 2015 Operating Agreement), and based upon his contractual obligations to provide services for and to the financial benefit of CCS (including those stated in Article VIII, Section 1 of the November 2015 Operating Agreement – "The Members and Officers shall perform their duties in good faith, in a manner they reasonably believe to be in the best interests of the LLC and with such care as an ordinary prudent person in a like position would use under similar circumstances"), STORCH owes a fiduciary duty to CCS, and its Members B. COHEN and S. COHEN, to protect the interests of the limited liability company and to refrain from engaging in activities that would cause injury to the limited liability company or deprive same of profit or advantage.

70.    Furthermore, Section 605.04091 ("Standards of conduct for members and managers") of the Florida Revised Limited Liability Act states, in pertinent part, the following:

> Each manager of a manager-managed limited liability company and member of a member-managed limited liability company owes fiduciary duties of loyalty and care to the limited liability company and members of the limited liability company.

71.     STORCH had and has a duty to account to CCS and hold as trustee for it any property, profit or benefit derived from the use of CCS' property, including but not limited to the IP Rights licensed, transferred and assigned from STORCH to CCS. However, STORCH has disavowed and renounced such obligation through, *inter alia*, the Wolfe Letter. Further, STORCH has provided property belonging to CCS to MIRSKY, in direct violation of STORCH's fiduciary duties to CCS.

72.     STORCH had and has a duty to refrain from competing with CCS in the conduct of CCS' activities and affairs before the dissolution of CCS. CCS has not been dissolved, there has been no stated intention to dissolve CCS and CCS remains an active limited liability company in the State of Florida. STORCH has begun competing with CCS by engaging MIRSKY, after MIRSKY's insistence that STORCH breach the November 2015 Operating Agreement, to conduct the same or similar activities and affairs as CCS.

**WHEREFORE**, as a direct and proximate result of STORCH's actions stated herein, Plaintiffs request that this Honorable Court render judgment in excess of $1,000,000, plus interests and costs, and such further relief as the Court may consider just.

## COUNT III – FRAUD IN THE INDUCEMENT

73.     Plaintiffs hereby re-allege the allegations contained in paragraphs 1-58 as if fully set forth herein and state as follows:

74.     This is a count for Fraud in the Inducement against STORCH.

75.     Prior to entering into the November 2015 Operating Agreement, STORCH approached B. COHEN and S. COHEN with the proposition that they invest a significant amount of capital into CCS and include STORCH as a Member of CCS for the purpose of exploiting STORCH's rich connections in the music industry as well as his publicity rights and copyrights

to be owned in forthcoming recordings. STORCH led B. COHEN and S. COHEN to believe that STORCH was no longer a cocaine user, had the real potential to return to, if not exceed, his prior potential in the music industry and that through the infusion of capital into CCS, B. COHEN, S. COHEN and CCS would all reap profits. B. COHEN and S. COHEN justifiably relied on the representations made by STORCH.

76.     STORCH made specific representations in the November 2015 Operating Agreement, including but not limited to STORCH representing, warranting and agreeing "to provide professional music production and music composition services (the "Production Services") to the LLC for the life of the LLC on a first priority, exclusive basis, and such Production Services may further be defined by an employment agreement and/or independent contract agreement executed by and between Member Scott Storch and the LLC." *See* **Exhibit "A", Article V.**

77.     Furthermore, STORCH represented, warranted and agreed, "and hereby licenses, transfers and assigns to the LLC, for valuable consideration, the sufficiency and receipt of which is hereby acknowledged by the Members, the right to utilize Member Scott Storch's name, image, likeness, trademarks, servicemarks, music publishing rights, and any other intellectual property interest related to him ("IP Rights"), without limitation.  Such assignment shall be valid for the life of the LLC and throughout the Universe, and Member Scott Storch represents, warrants and agrees to execute any and all documents deemed reasonable and necessary to evidence such grant of rights to the LLC." *See* **Exhibit "A", Article VI, Section 1.**

78.     Additionally, STORCH represented, warranted and agreed "to participate in the LLC and to perform the Production Services contemplated herein on a first priority, exclusive

basis to the LLC, and such performance shall be subject to the provisions contained in Article V." *See* **Exhibit "A", Article VIII, Section 2.**

79.     STORCH never actually intended to comply with the representations and warranties (knowing that they were false at the time that they were made); instead, STORCH intended for such false statements of fact to serve as a material inducement to entice Plaintiffs to enter into the November 2015 Operating Agreement and provide over $1,000,000 in capital contributions to CCS as well as provide, *inter alia*, a car and house for STORCH's use. Plaintiffs have been extensively damaged based on the reliance of STORCH's fraudulent misrepresentations.

80.     It is apparent that STORCH had no intention of following through with the material statements expressed as a means to entice Plaintiffs into entering the November 2015 Operating Agreement.

81.     STORCH used such material statements as a means to position himself to benefit financially and to the detriment of Plaintiffs.

**WHEREFORE**, as a direct and proximate result of STORCH's actions stated herein, Plaintiffs request that this Honorable Court render judgment in excess of $1,000,000, plus interests and costs, and such further relief as the Court may consider just. Additionally, Plaintiffs seek punitive damages, as proof of fraud is sufficient to create a jury question regarding punitive damages.

## COUNT IV – UNJUST ENRICHMENT AGAINST STORCH

82.     Plaintiffs hereby re-allege the allegations contained in paragraphs 1-58 as if fully set forth herein and state as follows:

83.     This is a count for Unjust Enrichment against STORCH and is separate and apart from the breach of contract claims Plaintiffs present against STORCH for breach of the November 2015 Operating Agreement.

84.     STORCH was unjustly enriched by B. COHEN and S. COHEN through a myriad of expenses incurred by B. COHEN and S. COHEN on behalf of STORCH, including but not limited to monthly payments on a Rolls-Royce (as well as insurance on the vehicle, which was paid in full), rent deposits paid for a house that STORCH was living in, a salary paid to STORCH and monthly payment of STORCH's mobile phone bill.

85.     The Wolfe Letter instructs B. COHEN, S. COHEN and CCS to cease any and all communications with STORCH and demands that they do not attempt to recover for any claim of debt. Thus, Plaintiffs are forced to seek judicial intervention to recover the monies that they laid out for STORCH's benefit, and society has an interest in preventing the injustice of STORCH retaining the benefits he received for which no payment has been made to B. COHEN, S. COHEN and CCS.

86.     There is a lack of an adequate remedy at law for Plaintiffs, as the expenses incurred by Plaintiffs for STORCH's benefit were not made pursuant to any contract and there is no specific contractual obligation for STORCH to repay same. Plaintiffs had incurred such expenses, for STORCH's benefit, as STORCH had begged Plaintiffs for assistance while they were developing CCS, prior to and after the execution of the November 2015 Operating Agreement.

87.     It would be vastly inequitable for STORCH to have experienced and/or retain the benefit of the monies and items that Plaintiffs provided to him, as they were delivered by Plaintiffs to STORCH (a) under false pretenses; (b) with STORCH's promise that he would not

fail any drug tests; and (c) were illegally and inequitably obtained by STORCH while he was engaging in side-dealings and backdoor schemes with Defendant MIRSKY.

**WHEREFORE**, as a direct and proximate result of STORCH's actions stated herein, Plaintiffs request that this Honorable Court render judgment in an amount no less than $50,000.00, plus interests and costs, and such further relief as the Court may consider just.

### COUNT V – CONVERSION AGAINST STORCH AND MIRSKY

88.     Plaintiffs hereby re-allege the allegations contained in paragraphs 1-58 as if fully set forth herein and state as follows:

89.     This is a count for Conversion against STORCH.

90.     STORCH has wrongfully retained monies and property provided by Plaintiffs and/or owed to CCS under the terms of the November 2015 Operating Agreement.

91.     STORCH entered into a business relationship with Defendant, MIRSKY, even though such a relationship causes STORCH to be in material breach of the November 2015 Operating Agreement.

92.     STORCH has been creating musical recordings and providing Production Services, and earning monies related to same – monies belonging to CCS. MIRSKY, by way of her business relationship with STORCH, also has retained monies due to CCS under the terms of the November 2015 Operating Agreement.

93.     Plaintiffs do not have a full accounting of the amount in which STORCH and MIRSKY have wrongfully retained, as Defendants have attempted to hide their receipt of monies, connected to Production Services and the exploitation of the IP Rights, from CCS.

94.     CCS owns and has the right to possess and exploit the IP Rights, STORCH and MIRSKY have intentionally interfered with CCS' rights, Defendants' interference has deprived

CCS of possession and use of the IP Rights as well as monetary gain from promised Production Services, and such interference has caused extreme damages to CCS.

**WHEREFORE**, as a direct and proximate result of Defendants' actions stated herein, Plaintiffs request that this Honorable Court render judgment in an amount no less than in excess of $1,000,000, plus interests and costs, and such further relief as the Court may consider just. Plaintiffs hereby expressly reserve the right to amend this Complaint to add a Count for Civil Theft under F.S. § 722.11.

## COUNT VI – DECLARATORY JUDGMENT AGAINST STORCH

95.     Plaintiffs hereby re-allege the allegations contained in paragraphs 1-58 as if fully set forth herein and state as follows:

96.     This is a count for Declaratory Judgment pursuant to 28 U.S. Code § 2201.

97.     The Wolfe Letter makes various claims, including but not limited to claims that (a) the agreements between Plaintiffs and STORCH are not valid nor binding on the parties; (b) CCS cannot enforce agreements between Plaintiffs and STORCH, because CCS does not have a license to operate as a "talent agent" under F.S. § 468.401; and (c) the agreements between Plaintiffs and STORCH do not transfer any copyright or creation of STORCH based on a violation of the "writing requirement" of the Copyright Act.

98.     STORCH has disavowed, voided, terminated and renounced any transfer of any copyrights or other intellectual property rights in favor of CCS and any prospective rights to CCS; Plaintiffs claim that such rights were properly licensed, transferred and assigned pursuant to the valid and binding November 2015 Operating Agreement.

99.     STORCH has demanded that Plaintiffs cease and desist any further exploitation, use, distribution or dissemination of any of STORCH's copyrights or his publicity rights;

Plaintiffs claim that those rights were the crux of why B. COHEN and S. COHEN signed the November 2015 Operating Agreement with STORCH and provided over $1,000,000 in capital contributions to the company, as well as paid for many of STORCH's expenses from June 2015 through December 2015.

100.    For all the reasons set forth above, there exists a bona fide, actual and present justifiable controversy between Plaintiffs and STORCH concerning the validity and enforceability of the agreements between Plaintiffs and STORCH as well as whether (a) STORCH can disavow, void, terminate and/or renounce any transfer of copyrights or other intellectual property rights that were provided to CCS; and/or (b) Plaintiffs must cease and desist any further exploitation, use, distribution or dissemination of any of STORCH's copyrights or publicity rights according to law..

101.    Plaintiffs request that the Court enter an order granting a speedy hearing, under Rule 57, concerning this count for declaratory judgment and advance it on the calendar.

**WHEREFORE**, Plaintiffs request that a declaratory judgment be entered in their favor, declaring that the agreements entered into between Plaintiffs and STORCH (including the November 2015 Operating Agreement) are valid and binding on the parties, STORCH licensed, transferred and assigned the IP Rights (as defined in the November 2015 Operating Agreement) to CCS, STORCH cannot, by law, unilaterally decide to disavow, void, terminate and/or renounce any transfer of copyrights or other intellectual property rights previously provided to CCS, and that CCS is not obligated, by law, to cease and desist exploitation, use, distribution or dissemination of STORCH's copyrights or publicity rights. Plaintiffs further ask the Court to award attorney's fees and costs to Plaintiffs pursuant to F.S. Chapter 86, and such further relief as the Court may consider just.

## COUNT VII – TORTIOUS INTERFERENCE WITH CONTRACT AGAINST MIRSKY

102.    Plaintiffs hereby re-allege the allegations contained in paragraphs 1-58 as if fully set forth herein and state as follows:

103.    This is a count for tortious interference with contract against MIRSKY.

104.    B. COHEN and S. COHEN entered into a valid and binding agreement (the November 2015 Operating Agreement) with STORCH.

105.    Defendant, MIRSKY had knowledge of the existence of the fully executed November 2015 Operating Agreement between the parties.

106.    MIRSKY knowingly and willfully induced STORCH to terminate and breach the November 2015 Operating Agreement.

107.    MIRSKY's conduct constitutes an unlawful tortious interference with B. COHEN's and S. COHEN's contract with STORCH. MIRSKY's interference in the contractual relationship between B. COHEN, S. COHEN and STORCH was intentional, born of improper motivations (including but not limited to MIRSKY's motivation to exploit STORCH's prevalence in the music industry, providing the same or similar services as CCS), and perpetuated through malicious and improper means.

108.    As a direct result of MIRSKY's interference with B. COHEN's and S. COHEN's contractual relations with STORCH, Plaintiffs have been damaged in an amount to be determined by this Court, together with interest, costs and attorneys' fees.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against MIRSKY and that MIRSKY pay forthwith to Plaintiffs its damages, together with interest, costs and attorneys' fees.

## COUNT VIII – INJUNCTIVE RELIEF AGAINST STORCH

109.    Plaintiffs hereby re-allege the allegations contained in paragraphs 1-58 as if fully set forth herein and state as follows:

110.    This is a count for injunctive relief against STORCH.

111.    As set forth hereinabove, STORCH intentionally and improperly induced B. COHEN and S. COHEN to invest over $1,000,000 in CCS, while STORCH never intended to actually follow through with his promises and obligations contained in the November 2015 Operating Agreement. In fact, soon after executing the November 2015 Operating Agreement, STORCH began competing against CCS by way of his business relationship with MIRSKY and sent CCS a cease and desist letter (the Wolfe Letter), instructing CCS that it cease and desist any further exploitation, use, distribution or dissemination of any of STORCH's copyrights or his publicity rights. Meanwhile, STORCH has himself, and allowed MIRSKY to, exploit, distribute and disseminate STORCH's intellectual property for monetary gain, and has withheld portions rightfully due to CCS.

112.    Plaintiffs have a legal right to the requested relief and have a substantial likelihood of success on the merits on account of STORCH's overt breaches of contract, breaches of fiduciary duty and wrongful and unlawful actions seeking to convert assets belonging to CCS.

113.    Irreparable injury will result if STORCH is not enjoined from converting and dissipating present and future assets of CCS in violation of applicable law.

114.    The public interest will be served by the injunction, as it will maintain the *status quo* and thereby limit and further damages to be suffered by CCS as well as B. COHEN and S. COHEN on account of STORCH's wrongful conversion. Furthermore, it will prevent STORCH

attempting to swindle other individuals and/or companies out of money, and will provide clarity to the businesses and individuals STORCH and MIRSKY are contacting under the guise that STORCH has no further obligations to third parties (i.e. CCS).

115. Plaintiffs do not have an adequate remedy at law. There is not only the risk of STORCH diverting monies owed to CCS and not having the ability to make payments otherwise due to CCS, but there is property in the form of Twitter, Facebook and Instagram accounts that rightfully belong to CCS and need to be transferred to same.

116. Furthermore, STORCH agreed that B. COHEN and S. COHEN would be irreparably damaged if any of the provisions of the November 2015 Operating Agreement were not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such an event. STORCH agreed that in such a case B. COHEN and S. COHEN shall be entitled to injunctive relief to prevent breaches of the November 2015 Operating Agreement and, specifically, to enforce the terms and provisions of the November 2015 Operating Agreement in any action instituted in any court of the U.S. or any state thereof having subject matter jurisdiction. *See* **Exhibit "A", Article XVI, Section 5.**

117. STORCH acknowledged that he was advised to seek advice of independent counsel and that he had an opportunity to seek advice of independent counsel. *See* **Exhibit "A", Article XV(1)(b) and (c).**

**WHEREFORE**, Plaintiffs respectfully request that this Court (a) enter an injunction against STORCH, preventing him from providing professional music production and music composition services (the "Production Services") to MIRSKY and/or for MIRSKY's use, and requiring STORCH to provide the Production Services to CCS for the life of CCS on a first

priority, exclusive basis; and (b) grant such additional relief as this Court deems just and proper,

including an award of reasonable attorneys' fees and costs incurred in this action.

## JURY TRIAL DEMAND

The Plaintiffs demand a trial by jury on all issues.

December 31, 2015                                    Respectfully submitted.

                                                    **HEITNER LEGAL, P.L.L.C**
                                                    *Attorney for Plaintiffs*
                                                    1736 NE 7th Street
                                                    Fort Lauderdale, FL 33304
                                                    Phone: 954-558-6999
                                                    Fax: 954-927-3333

By:

                                                    DARREN A. HEITNER
                                                    Florida Bar No.: 85956
                                                    Darren@heitnerlegal.com