BRAD COHEN, SETH COHEN,
and CCS MUSIC GROUP, LLC,

      Plaintiff,

v.

SCOTT STORCH and FLORENCE
MIRSKY,

      Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Florence Mirsky's Motion for Summary Judgment, ECF No. [45], filed on March 23, 2016. The Court has reviewed the Motion, supporting and opposing submissions, the record in this case, and is otherwise fully advised. For the reasons set forth below, the Court denies the Motion.

## I. BACKGROUND

On December 31, 2015, Plaintiffs Brad Cohen ("B. Cohen") and Seth Cohen ("S. Cohen") (collectively, the "Cohens") and CSS Music Group, LLC ("CSS") (collectively, "Plaintiffs") filed the instant matter against Scott Storch ("Storch") and Florence Mirsky ("Mirsky"). On March 17, 2016, Plaintiffs filed an Amended Complaint, ECF No. [39], alleging breach of contract, breach of fiduciary duty, fraud, unjust enrichment, and defamation against Storch; conversion against both Storch and Mirsky; and tortious interference with a contract against Mirsky. The Amended Complaint also seeks declaratory judgment and injunctive relief against Storch. This Court previously entered an order staying the case as to Defendant Scott

Storch pursuant to 11 U.S.C. § 362(a) based upon Storch's Suggestion of Bankruptcy, ECF No. [7], which indicated that on June 3, 2015, Storch filed a petition for relief under Title 11, United States Code, in the Bankruptcy Court for the Southern District of Florida. *See* ECF No. [12]. On April 5, 2016, this Court entered an Order lifting the stay as to Defendant Storch, following entry of the bankruptcy court's order indicating that the instant action was not subject to the automatic stay imposed by 11 U.S.C. § 362. ECF No. [55].

By way of background, Defendant Storch is a songwriter and musical producer who, Plaintiffs allege, entered into and executed a Performance Agreement with CCS on June 16, 2015. Am. Compl. ¶ 33.[1] The Performance Agreement was executed contemporaneously with a "Membership Interest Purchase Agreement" in consideration of Storch's right to purchase membership interest in CCS and is "intended to set forth general terms and conditions of the proposed business relationship between the parties and performance expectations of Storch." ECF No. [39] at 31, 32. Pursuant to the terms of the Performance Agreement, Storch purportedly agreed to "(1) 'undertake and assume the responsibility of performing for and on behalf of CCS the development and management of all creative development and production of entertainment materials to be undertaken on behalf of CCS'; (2) 'devote 100% of his efforts to CCS'; and (3) 'not engage in any activity, employment or such as an independent contractor related to the entertainment or music field while with CCS.'" Am. Compl. ¶ 66.

According to Plaintiffs, on December 21, 2015, Storch, by letter delivered by his legal counsel, Mr. Richard Wolfe, to B. Cohen and S. Cohen, individually and on behalf of CCS, stated that "Mr. Storch hereby demands that you and CCS cease and desist any further exploitation, use, distribution or dissemination of any of Mr. Storch's copyrights or his name,

---

[1] The original Complaint, ECF No. [1], centered on a November 2015 Operating Agreement between the Cohens and Storch. On March 16, 2016, Plaintiffs sought leave to amend to "properly litigate the issues as it relates to the [June 2015] Performance Agreement." ECF No. [35] ¶ 6.

image or likeness." *Id.* ¶ 42 (the "Wolfe Letter"); *see also* Def. Stat. Fact, ECF No. [46] ¶ 8. The Wolfe letter also demanded that the Cohens and CCS cease any and all communications with Storch, thereby allegedly creating a breach by Storch of the Performance Agreement. Am. Compl. ¶ 42. Plaintiffs further allege that on or about December 12, 2015, Storch told the Cohens that he could no longer work with them and CCS and that Storch would be working with Defendant Mirsky to provide substantially similar services to those originally intended to be provided to CCS. Am. Compl. ¶ 44.

Plaintiffs assert that, at some time after Storch's execution of the Performance Agreement, Mirsky, by and through her father, Jason Rubin, contacted Plaintiffs for purposes of obtaining the Performance Agreement and other agreements signed and executed by Storch and Plaintiffs. *Id.* ¶ 48. According to Plaintiffs, shortly after Mirsky's receipt of the agreements, Plaintiffs received the Wolfe letter, in which Storch essentially disavowed his contractual relationship with Plaintiffs. *Id.* ¶ 50. Plaintiffs also allege that Mirsky "(a) advised Storch to back out of his contractual arrangement with [Plaintiffs]; (b) paid for Storch to travel to Los Angeles County, California; (c) set up meetings between Storch and many potential clients that CCS had been in business talks with; and (d) caused Storch to inform [Plaintiffs] that Storch was not willing to comply with the Performance Agreement, and was instead going to work with Mirsky . . . ." *Id.* ¶ 52.

Based on the above, Plaintiffs assert a claim of conversion against Mirsky (Count V), alleging that Mirsky, by and through her "wrongful and improper" business relationship with Storch, has wrongfully retained monies and property provided by Plaintiffs and/or owed to CCS under the terms of the Performance Agreement. Am. Compl. ¶ 94. Plaintiffs also assert a claim for tortious interference with a contract against Mirsky (Count VII), alleging that Mirsky had

knowledge of the existence of the fully executed Performance Agreement and that she knowingly and willfully induced Storch to terminate and breach the Performance Agreement. *Id.* ¶¶ 108-109. Defendant Mirsky maintains that at no time did she do anything to procure Storch's alleged breach of the contract because Storch acted of his own volition, will, and intent and that at no time did Mirsky take any property or goods that belong to Plaintiffs. Def. Stat. Fact. ¶ 9, 10. Defendant Mirsky seeks entry of summary judgment on Counts V and VII.

## II. LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Howard v. Steris Corp.*, 550 Fed. App'x 748, 750 (11th Cir. 2013) ("The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor."). However, material facts set forth in the movant's statement of facts and supported by record evidence are deemed admitted if not controverted by the opposing party. S.D. Fla. L. R. 56.1(b).

"[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993)). The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). Even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence in the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III. DISCUSSION

### A. Count V – Conversion

Defendant Mirsky moves for summary judgment upon Plaintiffs' conversion claim. Defendant argues that Plaintiffs cannot maintain their claim for conversion because, under Florida law, "[n]either an obligation to pay money nor a breach of contract generally gives rise to a claim of conversion in tort." Mot. at 3 (citing *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990)). However, the cases cited by Mirsky are inapposite as Plaintiffs have not alleged that Mirsky breached the Performance Agreement or that Mirsky is the subject of a monetary debt. Rather, Plaintiffs assert that by assisting Storch in breaching the Performance Agreement, Mirsky has retained monies received from Storch's provision of services mentioned in the Performance Agreement that rightfully belong to Plaintiffs as owner of such rights. "Conversion is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting *Thomas v. Hertz Corp.,* 890 So.2d 448, 449 (Fla. 3d DCA 2004). The Court finds that Plaintiffs have properly asserted a claim for conversion as to Defendant Mirsky.

Defendant Mirsky further argues with a broad stroke that Plaintiffs have "no proof that Mirsky took any money belonging to them." Mot. at 4. Specifically, Mirsky cites to her sworn interrogatory answers in which Mirsky states that she has taken no property or money belonging to CCS. *Id.* Plaintiffs respond that "[a]s discovery is still ongoing, Plaintiffs have been unable to make a full accounting of the amount of monies [allegedly] wrongfully retained by Mirsky," in part, "due to [their] belief that Mirsky and Scott Storch have attempted to hide and/or comingle any and all monies received via various shell companies created on Scott Storch's behalf." Resp., ECF No. 57], at 10; *see also* Am. Compl. ¶ 97. The parties have up to and including July 1, 2016 to complete discovery. *See* ECF No. [16]. Indeed, Plaintiffs are scheduled to take Defendant

Mirsky's deposition on May 20, 2016. *See* ECF No. [68]; *see also* B. Cohen Aff., ECF No. [57-1] at 3 ("While I, through my attorney, have served Mirsky with discovery requests, her responses to such requests were lacking in substance. Thus, I am in need of further discovery in order to obtain relevant documents pertaining to the case and the underlying issues at hand."). Because a claim of conversion is highly fact-dependent, the Court agrees that Mirsky's Motion for Summary Judgment regarding Count V is premature and genuine issues of material fact remain. *See, e.g.*, *United States v. Korman*, No. 08-81090-CIV, 2009 WL 2195329, at *4 (S.D. Fla. Apr. 23, 2009) (quoting *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997) ("Although discovery need not be complete before a court can grant summary judgment, summary judgment is proper only after the nonmovant is 'permitted an adequate opportunity to complete discovery prior to consideration of the motion.'"). Defendant Mirsky's Motion for Summary Judgment with regard to Count V is accordingly denied.

### B.  Count VII – Tortious Interference with a Contract

Mirsky also moves to dismiss Count VII of the Amended Complaint, which alleges tortious interference with a contract against Mirsky. "A claim for interference with a contractual relationship requires: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010) (quoting *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co.,* 125 F.Supp.2d 1093, 1103 (S.D. Fla. 2000)).

Mirsky argues that Plaintiffs' claim for tortious interference fails for any one of five independent reasons, including: (1) the contract is terminable at will and thus not subject to a tortious interference claim; (2) the contract is unenforceable because it is an impermissible

restraint of trade or commerce; (3) the contract is unenforceable because Storch forfeited or had

no interest in CCS; (4) the contract is unenforceable because CCS is an unlicensed agent; and (5)

Mirsky did not procure a breach on the part of Storch. Each of these arguments is discussed in

turn.

### 1. The contract is terminable at will

Mirsky argues that Plaintiffs' claim fails as a matter of law because the Performance

Agreement is terminable at will and there can be no tortious interference with an employment

contract of indefinite duration. Mot. at 5 (citing *Am. Med. Int'l, Inc. v. Scheller*, 462 So. 2d 1, 8

(Fla. 4th DCA 1984)). However, "Florida courts have held that the mere fact that a contract is

terminable at will is not a defense to an action for tortious interference." *Knight v. Palm City*

*Millwork and Supply,* 78 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999); *see also Ahern v. Boeing Co.,*

701 F.2d 142, 144 (11th Cir.1983) ("The Florida courts have determined that 'an action will lie

where a party tortiously interferes with a contract terminable at will'"); *Rudnick v. Sears,*

*Roebuck & Co.*, 358 F. Supp. 2d 1201, 1205-06 (S.D. Fla. 2005) ("[U]nder Florida law an at-will

relationship can satisfy the first element of a claim for tortious interference with a business

relationship."); *Living Color Enter., Inc. v. New Era Aquaculture, Ltd.*, No. 14-62216-CIV, 2015

WL 1526177, at *7-8 (S.D. Fla. Apr. 3, 2015) ("Under Florida law, an action for tortious

interference with a business relationship will lie where a party tortiously interferes with a

contract terminable at will."); *McCurdy v. J.C. Collis,* 508 So.2d 380, 383 n. 6 (Fla. 1st DCA

1987) ("As the [Florida] supreme court made clear in *Tamiami Trail Tours,* the relationship at

issue need not be evidenced by an enforceable contract. Thus, an action will lie where, as in the

instant case, a party tortiously interferes with a contract terminable at will."); *Florida Power &*

*Light Co. v. Fleitas,* 488 So. 2d 148, 152 (Fla. 3rd DCA 1986) ("Intentional interference with a

contractual employment relationship—even one, as here, which is terminable at will—is actionable in Florida."); *Unistar Corp. v. Child,* 415 So.2d 733, 734 (Fla. 3rd DCA 1982) ("The general rule is that an action will lie where a party tortiously interferes with a contract terminable at will.").

Defendant Mirsky further argues that "[c]ompetition for business by a competitor is not actionable, even if intentional, unless the competitor is attempting to induce a customer to breach a contract that is not terminable at will." Mot. at 5 (quoting *Advantage Digital Sys., Inc. v. Digital Imaging Serv., Inc.*, 870 So. 2d 111, 116 (Fla. 2d DCA 2003)). Indeed, "[t]here can be no interference when the action undertaken is to safeguard or promote one's own financial or economic interest." *Living Color*, 2015 WL 1526177, at *7-8 (citing *Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986)). However, the privilege to solicit those who have entered into at-will contracts is not absolute and there is an obligation to use proper means in any attempt at such solicitation. *See Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, No. 8:09-CV-2453-T-30TBM, 2011 WL 5597364, at *3 (M.D. Fla. Nov. 17, 2011) (citing *McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. 1st DCA 1987)).

Plaintiffs argue that Mirsky acted with improper means to allegedly procure Storch's purported breach of the Performance Agreement. Plaintiffs have alleged that Mirsky contacted Plaintiffs via Jason Rubin to obtain the Performance Agreement under the guise of membership in or purchase of CCS (and therefore was aware of the existence of the contract); moved Storch to California; paid for a place to stay, studio time, and purchased studio equipment on behalf of Storch; scheduled and attended business meetings with Storch as his manager; booked events for Storch and received compensation; and committed a number of other acts to "pry" Storch away from his contractual relationship with Plaintiffs. Resp. at 12-13 (citing B. Cohen Aff., ECF No.

[57-1]). Defendant Mirsky counters that Plaintiffs' "naked allegations" do not rebut Storch's affidavit, ECF No. [45-3], in which Storch states that his actions, such as hiring the attorney who sent the Wolfe letter, were on his own volition and that at no time did Mirsky do anything to procure his alleged breach of the contract. "[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986). Accordingly, because there remains a genuine issue of material fact as to whether Mirsky acted with proper means to procure Storch's alleged breach of the Performance Agreement, summary judgment is appropriately denied as to this issue.

### 2. The contract is unenforceable because it is a restraint of free trade or commerce

Defendant Mirsky further argues that the Performance Agreement is unenforceable as it constitutes an unlawful restraint of trade or commerce. Specifically, Mirsky argues that Paragraph 6 of the Performance Agreement, *see* ECF No. [39] at 33, does not constitute a permissible non-competition agreement as Plaintiffs have not pleaded the existence of a legitimate business interest.

In Florida, for a restrictive covenant to be valid, "[t]he person seeking enforcement of [the] restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." Fla. Stat. § 542.335(1)(b). Section (1)(b) enumerates a non-exhaustive list of "legitimate business interest[s]," including (1) "trade secrets"; (2) "[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets"; (3) "[s]ubstantial relationships with specific prospective or existing customers, patients, or clients"; and (4) "[e]xtraordinary or specialized training."

Plaintiffs assert that the Performance Agreement highlights and the Amended Complaint pleads the legitimate business interests of Plaintiffs. Specifically, Plaintiffs note that Paragraphs 5 and 6 of the Performance Agreement specifically state that Storch acknowledges that he will be "making use of, acquiring and/or adding to confidential information of a special and unique nature and value relating to such matters as CCS's trade secrets . . . ." ECF No. [39] at 32. Plaintiffs further emphasize that Storch, with the assistance of Mirsky, has been attending and setting up business meetings with potential clients that CCS had been in contact with previously. Because the Performance Agreement specifically refers to valuable confidential information and trade secrets, as well as the "special and unusual character" of Storch's services rendered "which have unique value to CCS, the loss of which cannot adequately be compensated by damages in an action at law," the Court finds that Plaintiffs have demonstrated a legitimate business interest justifying the restrictive covenant.

Once the person seeking enforcement of the covenant establishes a *prima facie* case that the restraint "is reasonably necessary," the burden shifts to the person opposing enforcement to establish "that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest[s]." Fla. Stat. 542.335(c). The statute further provides that "[i]f a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest[s], a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest[s]." *Id.*

Paragraph 6 of the Performance Agreement specifically states:

. . . In view of the unique value to CCS of the services of Storch for which CCS has contracted hereunder, and because of the confidential information to be obtained by or disclosed to Storch, as hereinabove set forth, and as a material inducement to Storch to enter into this Agreement, and to pay to Storch the

compensation referred to in Section 4 hereof,  . . . Storch covenants and agrees as follows:

A. During Storch's service hereunder and for a period of five (5) years after he ceases to be with CCS for whatever reason, Storch shall not, directly or indirectly, solicit business from, divert business from, or attempt to convert other methods of using the same or similar products or services as provided by CCS, or otherwise contact any client, account, or location of CCS with which Storch has any contact as a result of his services for CCS hereunder. . . .

ECF No. [36] at 33.

Mirsky broadly argues that Paragraph 6 is stated in "unclear, general and non-specific terms, which purports to prevent Storch from 'using confidential information, soliciting business, diverting business, consulting methods or using similar products and services provided by CCS,' on a worldwide basis." Mot. at 7. However, Mirsky has not demonstrated *how* these terms are unclear, overbroad, or overlong. Specifically, Paragraph 6 does not, as Mirsky argues, purport to "restrain Storch from pursuing his trade, forever and on a worldwide basis . . . in return for nothing." Mot. at 7. Rather, the covenant specifically states that the restriction shall apply during Storch's service and for a period of five years "after he ceases to be with CCS."

Fla. Stat. 542.33 creates a set of rebuttable presumptions with regard to the reasonableness in time of certain restrictive covenants. Specifically, the statute provides that a court shall presume reasonable in time any restraint 6 months or less in duration and unreasonable any restraint more than 2 years in duration for covenants sought to be enforced against a former employee, agent, or independent contractor. § 542.335(d)(1). However, "[i]n determining the reasonableness in time of a post-term restrictive covenant predicated upon the protection of trade secrets"—which is included as a basis for the covenant here—"a court shall presume reasonable in time any restraint of 5 years or less and shall presume unreasonable in time any restraint of more than 10 years." *Id.* § 542.335(e). The statute also provides that a court

shall presume reasonable any restraint 3 years or less in duration and unreasonable any restraint more than 7 years in duration for covenants sought to be enforced against the seller of a limited liability company membership. *Id.* § 542.335 (d)(3). Based upon these presumptions, the Court cannot determine that the restrictive covenant in Paragraph 6 of the Performance Agreement are *per se* unreasonable. Defendant Mirsky provides the Court no specific argument or guidance regarding how the covenant is unclear, general, and non-specific or that five years is not reasonable in time.

Because Mirsky has failed to establish "that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest[s]," Fla. Stat. 542.335(c), the Court cannot find that the restrictive covenant is unenforceable. Defendant Mirsky's request for summary judgment on this basis is denied.

### 3. Storch forfeited or had no interest in CCS

Mirsky avers that Plaintiffs cannot seek enforcement of the Performance Agreement because on June 4, 2015, Storch filed for bankruptcy and any interest of Storch in CCS would then be property of his bankruptcy estate. Specifically, Mirsky argues that on June 16, 2015, the day of execution of the Performance Agreement, Storch was no longer a member of CCS, as his interest in the LLC was held at that time by Scott Brown, as his bankruptcy trustee, who did not execute the Performance Agreement. Mirsky further argues that Plaintiffs have stipulated that they cannot seek enforcement of the November 2015 LLC Operating Agreement, and that they now cannot seek enforcement of the June 16, 2015 Performance Agreement—which suffers from the same infirmities as the Operating Agreement and is "nothing more than an exhibit to [the] earlier LLC [Operating Agreement]." Mot. at 7; Reply at 15; *see also* Pl.'s Mot. to Amend

Compl., ECF No. [35] ¶ 5, 6 (seeking amendment of the Complaint to litigate issues relating to the Performance Agreement).

On March 21, 2016, the bankruptcy court overseeing Storch's bankruptcy petition entered an Order Determining that the Automatic Stay [as to Storch] is Not Applicable to District Court Action, ECF No. [44-2]. In that Order, the bankruptcy court acknowledged that Plaintiffs were not (a) claiming any right or interest in the property of the bankruptcy estate; and (b) were not seeking in any way to impact, affect or impair the bankruptcy estate's interest in any music or compilations of any type or Storch's scheduled interest in CCS. On March 16, 2016, Plaintiffs filed a Motion to Amend Complaint, seeking to amend their original Complaint in order to "properly litigate" issues relating to the Performance Agreement. This amendment was sought in light of the bankruptcy court's representation at hearing that "the November 2015 Operating Agreement—which served as the underlying basis for the causes of action alleged in the Complaint—was ineffective, and that the proper agreement for litigation is the Performance Agreement, signed and executed by Storch and Plaintiffs on or around June 16, 2015." Mot. to Amend ¶ 5.

Further, with regard to Storch's membership in CCS, Plaintiffs argue that Storch entered into the Performance Agreement in his individual capacity, and in consideration for his right to purchase a membership interest in CCS. *See* ECF No. [39] at 31 ("In consideration of the right to purchase, Scott Storch agrees to be bound by the Performance Agreement executed contemporaneously with this [Membership Interest Purchase] Agreement, a copy of which is attached hereto as Exhibit B2."). Indeed, the Performance Agreement, executed on June 15, 2015, explicitly states that the agreement is entered into "by and between Scott Storch ('Storch'), individually and CCS Music Group, LLC." ECF No. [39] at 32. The Court, therefore, agrees

with Plaintiffs that whether or not Storch had any interest in CCS at the time of executing the Performance Agreement is irrelevant, as the Performance Agreement was executed after Storch's petition for bankruptcy and does not implicate any of Storch's pre-petition property or rights, and thus does not require execution by the trustee.

### 4. CCS is an unlicensed talent agent

In Defendant Mirsky's reply brief, ECF No. [59], she concedes that Plaintiffs have asserted material facts in controversy with regard to her argument that the contract is unenforceable as a matter of law because CCS is an unlicensed talent agency. Thus, the Court will not consider this argument for purposes of this Motion.

### 5. Mirsky did not procure Storch's breach

Mirsky finally argues that Plaintiffs cannot show that Mirsky intentionally procured a breach of the Performance Agreement because any actions on the part of Storch were taken of Storch's own accord and free volition. In support of her contention, Mirsky cites to Storch's affidavit as well as her own answers to interrogatories, in which Mirsky states that she did nothing to procure Storch's breach of the contract. *See* Ex. A, Mirsky Interrogs. Feb. 11, 2016, ECF No. [45-1] ¶¶ 24-25 (Q: "Fully explain your reasoning as to why you advised Scott Storch that he should work with you after he signed the November 2015 Operating Agreement." A: "This defendant cannot answer the interrogatory number 24 as drafted because I did not give Scott Storch such advice."); Ex. C, Storch Aff., ECF No. [45-3] ¶ 2 ("I did so of my own free will and volition based upon advice given to me by a number of people . . . and I was not encouraged or induced to do so by Florence Mirsky."); Ex. C, Storch Aff. ¶ 8 ("At no time did Florence Mirsky do anything to procure my alleged breach of the Contract."). Mirsky further

argues that "Plaintiffs admit that they have no direct knowledge of any acts supporting the allegations of the Complaint." Mot. at 9.

Plaintiffs counter that Mirsky's argument amounts to "flat out denying any liability," and that "simply stating that Mirsky did not tortiously interfere," without providing any substantial facts or proof, "does not satisfy the hefty burden needed to obtain summary judgment." Resp. at 16. The Court agrees. Moreover, as Plaintiffs note, the stay as to Defendant Storch was not lifted until after Mirsky's Motion was filed and Plaintiffs have therefore not been afforded the requisite time and opportunity to challenge the information presented by Storch's affidavit, upon which Mirsky relies. The Court further notes that Defendant Mirsky's deposition remains pending. Because Mirsky's Motion has been filed prematurely and because there exist genuine issues of material fact as to whether Mirsky procured Storch's alleged breach, the Motion is appropriately denied as to this issue.

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** that Defendant Mirsky's Motion for Summary Judgment, **ECF No. [45]**, is **DENIED**. Because oral argument on the issues raised in the Motion is not necessary, Defendant's Request for Oral Argument on her Motion for Summary Judgment, **ECF No. [47]**, is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 2nd day of May, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:  Counsel of Record